In re Robert C. **ELLSWORTH** and Judith Ellsworth, his wife; R.C. Ellsworth Co.; and Chevelon Cattle Co., a sole proprietorship, Debtors.

Jack **HALPERIN**, Trustee; and Arizona Livestock Production Credit Association, Appellants,

v.

**TRI-STATE LIVESTOCK CREDIT COR-PORATION**, a Calif. corporation; Spence and Norton, a partnership; A.T. Spence, Jr., an individual; John Norton, an individual; Robert C. Ellsworth and Judith Ellsworth, his wife, Appellees.

BAP Nos. AZ–82–1159HGK, AZ–82–1191HGK.

Bankruptcy No. B–81–01917 PHX.

Adv. No. B–81–0932 PHX.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Oct. 20, 1982.

Decided March 15, 1983.

**14**

Peter J. Rathwell (argued), Snell & Wilmer, Henry Jacobwitz, Kaplan, Jacobowitz, Hendricks & Bosse, Phoenix, Ariz., for appellants.

Stanton A. Shafer (argued), Evans, Kitchel & Jenckes, Jefferson L. Lankford (argued), Jennings, Strouss & Salmon, Phoenix, Ariz., for appellees.

Before HUGHES, GEORGE and KATZ, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

The trustee in bankruptcy and Arizona Livestock Production Credit Association appeal from a partial summary judgment in favor of Tri-State Livestock Credit Association and from denial of ALPCA's motion for summary judgment in its favor. Spence and Norton, a partnership, is also a party to the appeal. We reverse the judgment in favor of Tri-State and dismiss the other order appealed.

### I

The facts are not in dispute. Spence and Norton finances its cattle business through loans from Tri-State, which are secured by Spence and Norton's cattle. The security agreement relevant to this appeal was executed in 1979 and duly perfected. It contained a clause prohibiting Spence and Norton from selling the encumbered cattle without Tri-State's written consent.

In January and May 1981, Spence and Norton transferred 801 heifers that were subject to Tri-State's security interest to Ellsworth. Whether the transactions were leases or sales is disputed but for purposes of the Tri-State judgment they are conceded to be sales.

Meanwhile, ALPCA extended credit to Ellsworth for feed and maintenance of cattle pursuant to a security agreement that was perfected in April 1980.

Ellsworth filed bankruptcy in August 1981, and Tri-State, Spence and Norton, ALPCA and the trustee all asserted claims to the 801 heifers. Tri-State moved for summary judgment affirming the priority of its security interest over the other claimed interests, and cross-motions were filed by the other interested parties.

The trial court, holding that Tri-State had a continuing security interest that was superior to those of the trustee and ALPCA, granted Tri-State's motion. The other motions were denied without comment as moot.

The trustee and ALPCA contend that Tri-State's security interest ceased when Spence and Norton transferred the cattle to Ellsworth. That issue requires application of Arizona's version of the Uniform Commercial Code to the uncontradicted facts, including the Tri-State security agreement with Spence and Norton.

Before addressing that legal issue, however, it is appropriate to develop the procedural context further. Spence and Norton brought one of the motions rendered moot by Tri-State's judgment. The motion arose in a cross-claim against ALPCA and the trustee whereby Spence and Norton asserted superior interest either as a lessor or as a secured party. Spence and Norton did not allege perfection of its interest by means of a duly filed UCC–1 financing statement. Nor did it contest Tri-State's complaint. Tri-State did not allege that Spence and Norton was unable to pay its indebtedness.

Two inferences may be drawn from the foregoing: 1. The interests of Tri-State and Spence and Norton are identical in the Tri-State action, i.e., it is in Spence and Norton's interest that Tri-State's lien be upheld. 2. Indeed, should Spence and Norton pay its debt to Tri-State, preservation of the lien would be of interest only to Spence and Norton.

It is understandable that Spence and Norton fully supports Tri-State's position in this appeal.

## II

The continued validity of Tri-State's lien depends on whether Tri-State authorized the transfer within the meaning of UCC § 9–306(2), A.R.S. § 44–3127.B.

As a general rule, "[a] buyer in the ordinary course of business ... takes free of a security interest ...", except where the buyer purchases farm products from a person engaged in farming operations. UCC § 9–307(1), A.R.S. § 44–3128.A. ALPCA concedes that cattle are farm products, but relies on an exception to the exception, UCC § 9–306(2), A.R.S. § 44–3127.B, which provides that "... a security interest continues in the collateral notwithstanding sale ... *unless the disposition was authorized by the secured party in the security agreement or otherwise...*" (Emphasis supplied).

The Spence and Norton transfer to Ellsworth was authorized by Tri-State. An affidavit of A.T. Spence, Jr. of Spence and Norton described the arrangement:

2. Tri-State ... has financed Spence and Norton's cattle business for several years. Spence and Norton was given a line of credit, funds have been advanced as needed, and Spence and Norton has made periodic payments on the loan.

3. The understanding between Tri-State and Spence and Norton has been that Tri-State's consent to cattle sales would be conditioned upon the delivery of the cash proceeds from the sales to Tri-State.

4. Spence and Norton have delivered all cash proceeds from the sales of cattle to Tri-State...

5. Tri-State has released its security interest in the cattle sold by Spence and Norton after Tri-State received the cash proceeds from the sale.

6. Prior to shipping the cattle..., I advised Len Beechinor of Tri-State that Spence and Norton were delivering the cattle in question to Bob Ellsworth under a lease pasture arrangement.

Thus, Tri-State consented to Spence and Norton's sales to others on condition the proceeds be delivered to Tri-State.

This is not disputed by Tri-State, which said in its appellate brief: "... Tri-State has conditioned any sales of collateral on receipt of cash proceeds."

Tri-State cites two cases for the proposition that such conditioned consent does not cut off the security interest until the secured party is paid. *Southwest Washington Production Credit Association v. Seattle First National Bank,* 92 Wash.2d 30, 593 P.2d 167 (1979); *Baker Production Credit Association v. Long Creek Meat Co.,* 97 Or. 1372, 513 P.2d 1129 (1973). Notwithstanding these authorities, we conclude that the rule advocated by Tri-State does not commend itself.

16

To begin with, according to the plain language of the statute, the security interest is cut off if the disposition is authorized. Nothing in the statute suggests that only unconditional authorization triggers the cut-off. Furthermore, it is clear from the statute that authorization—not payment—invokes the exception to the exception, but appellee would have the lien cut off by payment.

Next, there is contrary authority, *First National Bank v. Iowa Beef Processors,* 626 F.2d 764 (10th Cir.1980) based on Oklahoma law. The Tenth Circuit analyzed reported cases in terms of those involving conditions precedent to authorization, and those, such as the case before it, involving a condition subsequent. Authorization subject to conditions occurring prior to the sale is entirely consistent with the plain language of the statute; until the condition occurs, there is no authorization.

After a careful analysis of the issue, as well as of *Southwest Washington PAC,* supra, the Tenth Circuit panel held, at p. 769, "that even though the secured party conditions consent on receipt of the proceeds, failure of this condition will not prevent the consent from cutting off the security interest under section 9–306(2)". The Oklahoma and Arizona statutes read the same in this regard.

We are persuaded that the rule announced in *First National Bank,* supra, properly construes the statute. We therefore hold that Tri-State's security interest terminated when Spence and Norton transferred the cattle to Ellsworth with Tri-State's authorization, even though it was conditioned on subsequent receipt of the proceeds by Tri-State.

### III

The foregoing assumes that Spence and Norton sold the cattle to Ellsworth. Both Tri-State and Spence and Norton contend, however, that the transaction was a lease and not a sale. Because of the trial court's ruling on Tri-State's lien, it did not have to decide the lease-sale question.

This issue will have to be addressed on remand. If Spence and Norton merely leased the cattle to Ellsworth, Tri-State's lien may not necessarily have terminated. [Whether a lease is an "other disposition" pursuant to UCC § 9–306(2), A.R.S. § 44–3127.B., was not briefed and we decline to decide the question]. Furthermore, Spence and Norton may have rights as a lessor that are paramount to those of the trustee or ALPCA.

The order granting partial summary judgment in favor of Tri-State is reversed and remanded for further proceedings. We dismiss the appeal from the interlocutory order denying ALPCA's motion for summary judgment. See *Bealmer v. Texaco Inc.,* 427 F.2d 885, 887 (9th Cir.1970). Cert. den. 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).